IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-290-D-1
No. 5:19-CV-163-D

| | |
|---|---|
| LASHUN TRACY TINNEN, ) | |
| ) | |
| Petitioner and Defendant, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

On September 21, 2020, Lashun Tracy Tinnen ("Tinnen" or "petitioner"), pro se, moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 75]. On February 16, 2021, Tinnen, pro se, moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his 262-month sentence [D.E. 80]. On April 30, 2021, the government moved to dismiss Tinnen's section 2255 motion and, in the alternative, for summary judgment [D.E. 92] and filed a memorandum in support [D.E. 93]. On August 5, 2021, Tinnen responded in opposition [D.E. 99]. As explained below, the court grants the government's motion to dismiss, dismisses Tinnen's section 2255 motion, and denies Tinnen's motion for compassionate release.[1]

I.

In 2018, Tinnen was a serious drug dealer and habitual felon in Raleigh, North Carolina. See Presentence Investigation Report ("PSR") [D.E. 44] ¶¶ 1–34. On November 5, 2018, pursuant to

---

[1] Tinnen also moved to dismiss the court's April 17, 2019 order regarding the forfeiture of property [D.E. 90]. The government responded in opposition [D.E. 91]. For the reasons in the government's response in opposition, the court denies the motion as meritless.

a plea agreement, Tinnen pleaded guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(A), and 21 U.S.C. § 841(a)(1) (count one) and possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (count two). See [D.E. 22, 24].

On April 17, 2019, the court held Tinnen's sentencing hearing and adopted the facts set forth in the PSR. See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR; Sent. Tr. [D.E. 70] 5. Tinnen's counsel objected to the drug weight used to calculate the advisory guideline and the six-level enhancement under U.S.S.G. § 3A1.2(c)(1). See PSR Add. [D.E. 44]; [D.E. 48]; Sent. Tr. at 5. After the court accepted the drug weight stipulated in the plea agreement, Tinnen and the government presented evidence on the section 3A1.2(c)(1) enhancement. See Sent. Tr. at 5–53; [D.E. 54]. The court overruled Tinnen's objection under section 3A1.2(c)(1) and calculated Tinnen's offense level to be 35, his criminal history category to be III, and his advisory guideline range to be 210 to 262 months' imprisonment. See Sent. Tr. at 50–54. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Tinnen to 262 months' imprisonment on count one, and 240 months's concurrent imprisonment on count two, for a total term of 262 months' imprisonment. See id. at 54–78; [D.E. 62].

On April 22, 2019, Tinnen appealed pro se. See [D.E. 55]. On April 24, 2019, Tinnen moved to vacate his sentence under 28 U.S.C. § 2255. See [D.E. 60]. On May 3, 2019, Tinnen filed a document "declaring ineffective assistance of counsel." [D.E. 65] 1. On June 10, 2019, Tinnen asked to withdraw his section 2255 motion in light of his pending direct appeal. See [D.E. 67]. This court terminated the motion the same day. On November 18, 2019, the United States Court of Appeals for the Fourth Circuit enforced the appellate waiver in Tinnen's plea agreement and dismissed his appeal. See [D.E. 71].

2

On September 21, 2020, Tinnen moved pro se for compassionate release. See [D.E. 75]. On February 16, 2021, Tinnen again moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 262-month sentence. See [D.E. 80]. On April 30, 2021, the government moved to dismiss Tinnen's section 2255 motion and, in the alternative, for summary judgment. See [D.E. 92]. On August 5, 2021, Tinnen responded in opposition. See [D.E. 99].

II.

In Tinnen's section 2255 motion, Tinnen argues that he received ineffective assistance of counsel because (1) his counsel failed to object to the sentencing enhancement for possession of a firearm in connection with drug trafficking under U.S.S.G. § 2D1.1(b)(1) and (2) his counsel failed to object to a "breach of the plea agreement" when the government did not object to the section 2D1.1(b)(1) enhancement. See [D.E. 80] 4–5.[2]

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court

---

[2] Tinnen also argues that the "cumulative impact" of the alleged errors requires resentencing. [D.E. 80-2] 16. This claim is not separate from the two underlying alleged errors. Thus, the court does not address this argument separately.

3

may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

Although couched as an ineffective assistance of counsel claim, Tinnen alleges that the court erred in applying the enhancement under U.S.S.G. § 2D1.1(b)(1). See [D.E. 80] 4–5. Tinnen, however, cannot use section 2255 to attack his advisory guideline range retroactively. See, e.g., United States v. Foote, 784 F.3d 931, 935–36 (4th Cir. 2015); United States v. Pregent, 190 F.3d 279, 283–84 (4th Cir. 1999) ("Barring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a [section] 2255 proceeding.").

Alternatively, Tinnen procedurally defaulted this claim by failing to raise it on direct appeal. See [D.E. 80] 2. Thus, the general rule of procedural default bars Tinnen from presenting this claim under section 2255. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Furthermore, Tinnen has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged error about which he now complains. See Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270,

4

280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999). Thus, the claim fails.

Alternatively, Tinnen's claim that the court erred in applying the enhancement under U.S.S.G. § 2D1.1(b)(1) lacks merit. Tinnen claims that the firearms in his residence were not connected to his drug distribution because he did not have a firearm with him at Crabtree Valley Mall when he was arrested while attempting to conduct a large cocaine deal. See [D.E. 80-2] 12–14. However, during Tinnen's Rule 11 hearing, when relating the factual basis for Tinnen's guilty plea, the government referenced not only the events at the Crabtree Valley Mall but also the subsequent search of Tinnen's residence and the recovery of $2000 and two firearms. See Rule 11 Tr. [D.E. 69] 23–25. Under the advisory sentencing guidelines, a two-level enhancement is warranted if a dangerous weapon was possessed during the offense. The offense in this case includes both the conspiracy to distribute cocaine and the possession with intent to distribute cocaine. The enhancement "reflects the increased danger of violence when drug traffickers possess weapons" and "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt.n.11(A); United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997). After Tinnen was arrested, Tinnen confessed that he had been dealing drugs from December 2013 to May 10, 2018. Tinnen's wife, Jennifer Tinnen, was present at the attempted large cocaine deal when investigators arrested Tinnen and seized almost half a kilogram of cocaine and over $17,000. See PSR ¶ 7. After Tinnen's arrest, Jennifer Tinnen consented to the search of their residence, where investigators found two firearms. See id. ¶ 9. Jennifer Tinnen only claimed possession of one firearm. See id. The firearms were located near 3 grams of marijuana and in a location where Tinnen furthered the conspiracy to distribute cocaine. See id. Therefore, it was not clearly improbable that at least one firearm was connected to Tinnen's cocaine trafficking, and the

5

court correctly applied the enhancement. See U.S.S.G. § 2D1.1(b)(1); United States v. Bolton, 858 F.3d 905, 912 (4th Cir. 2017); Harris, 128 F.3d at 852.

Tinnen alleges that he received ineffective assistance of counsel because his counsel failed to object to the firearm enhancement and a "breach of the plea agreement" when the government did not object to applying the section 2D1.1(b)(1) enhancement. The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996). To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Tinnen must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A

6

party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

Tinnen has not plausibly alleged deficient performance at sentencing. As discussed, the court properly applied the firearm enhancement in this case. Accordingly, even if defense counsel had objected to the section 2D1.1(b)(1) enhancement, the objection would have failed. See U.S.S.G. § 2D1.1(b)(1); Bolton, 858 F.3d at 912; Harris, 128 F.3d at 852. And the government's failure to object to the enhancement did not breach the plea agreement.[3] Thus, the propose objections from Tinnen's counsel would have failed as frivolous. The Sixth Amendment does not require a lawyer to make all non-frivolous objections, much less frivolous ones. See Knowles v. Mirzayance, 556 U.S. 111, 124–26 (2009). On this record, there was no deficient performance. See id.; Strickland, 466 U.S. at 691.

Alternatively, Tinnen has not plausibly alleged prejudice concerning counsel's performance at sentencing. To prove prejudice from deficient performance at sentencing, a defendant must prove a reasonable probability that the defendant would have been sentenced differently if the error had not occurred. See Sears v. Upton, 561 U.S. 945, 955–56 (2010); United States v. Carthorne, 878

---

[3] Tinnen misreads the plea agreement. The plea agreement states that the "The parties agree, pursuant to Fed. R. Crim. P. 11(c)(1)(B), to the following positions as to the below-listed sentencing factors only, which are not binding on the Court in its application of the advisory Guideline range." [D.E. 23] 8. The agreement then lists the agreed-upon drug weight for the base offense level and credit for acceptance of responsibility. Id. This provision does not mean the government and Tinnen agreed that only those sentencing factors applied. Rather, this provision means only that the parties agreed as to those two sentencing factors. Tinnen and the government were both free to object or not object to other sentencing factors. Indeed, at sentencing, Tinnen's counsel objected to the section 3A1.2(c)(1) enhancement. See Sent. Tr. at 5–53. Moreover, even if Tinnen's interpretation were correct, he still does not plausibly allege prejudice from his counsel's failure to object to the government's failure to object to the section 2D1.1(b)(1) enhancement at sentencing. Notably, during Tinnen's Rule 11 colloquy, the court informed Tinnen that it was not a party to the plea agreement and the sentencing recommendations in the plea agreement were not binding on the court. See Rule 11 Tr. at 4–5, 17–22. The government did not breach the plea agreement.

7

F.3d 458, 469–70 (4th Cir. 2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In light of this court's alternative variant sentence, Tinnen has not plausibly alleged that counsel could have done something differently to obtain a different sentence for Tinnen. See Sent. Tr. at 78–79. This court's alternative variant sentence defeats any claim that counsel's performance at sentencing prejudiced Tinnen. See Molina-Martinez v. United States, 136 S. Ct. 1338, 1345–47 (2016); United States v. Feldman, 793 F. App'x 170, 173–74 (4th Cir. 2019) (per curiam) (unpublished); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 160–65 (4th Cir. 2012); Sent. Tr. at 70–71. Thus, Tinnen has not plausibly alleged prejudice. See, e.g., Sears, 561 U.S. at 956; Strickland, 466 U.S. at 689–700.

After reviewing the claims presented in Tinnen's motion, the court finds that reasonable jurists would not find the court's treatment of Tinnen's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

Tinnen moves for compassionate release under the First Step Act. See [D.E. 75]. On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to

8

bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[4] Application note 2 states

---

[4] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

       (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis

9

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus,

of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

In his motion for compassionate release, Tinnen claims that he has satisfied the exhaustion requirement. See [D.E. 75] 2; [D.E. 75-1]. The government has not invoked section 3582's

11

exhaustion requirement. Cf. United States v. Muhammad, 16 F.4th. 126, 130 (4th Cir. 2021). Accordingly, the court addresses Tinnen's motion on the merits.

Tinnen seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Tinnen cites the COVID-19 pandemic, his health conditions (i.e., history of smoking, a bullet from a previous gunshot wound that is near Tinnen's spine, and being "immunocompromised"), and his release plan. See [D.E. 75] 4–14.

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Tinnen argues that his gunshot injury, history of smoking, and immunocompromised status place him at heightened risk of serious infection from COVID-19. See [D.E. 101] 5; [D.E. 102] 1, 1 n.1. Beyond generalized arguments about the spread of COVID-19 within BOP generally and FCI Lorretto specifically, Tinnen does not argue he is unable to manage his health conditions while incarcerated or that the BOP is not treating his health conditions.

Although some of Tinnen's conditions are not risk factors for severe COVID-19 infection, some of his conditions are recognized risk factors. See Centers for Disease Control, Groups At Risk for Severe Illness, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 24, 2022). Tinnen cites studies and articles about the risk of severe COVID-19 infection among those with his conditions and the difficulty of controlling COVID-19 spread in prison. See [D.E. 75] 9–13; [D.E. 75-2]; [D.E. 75-3]. The record does not indicate whether Tinnen has been vaccinated. However, BOP has diligently pursued vaccination in its facilities, offering COVID-19 vaccines to staff and inmates. See Bureau of

12

Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited Mar. 24, 2022). BOP has also made extensive efforts, beyond vaccination, at controlling and containing COVID-19 and has greatly reduced to infection and spread rate in its facilities. See id. As of March 24, 2022, FCI Lorretto, where Tinnen is incarcerated, has no inmate or staff confirmed COVID-19 test positives. See https://www.bop.gov/coronavirus (last visited Mar. 24, 2022). Given Tinnen's conditions and BOP policy, the BOP likely has provided Tinnen the opportunity to be vaccinated against COVID-19. See id. Regardless of Tinnen's decision on vaccination, the wide availability of COVID-19 vaccines generally greatly diminish Tinnen's risk from COVID-19. Cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19). Accordingly, reducing Tinnen's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Tinnen's health conditions, and his release plan are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Tinnen offers a release plan that includes staying with family members, quarantining upon release, and receiving medical treatment from his longtime physician. See [D.E. 75] 14. However, the wide availability of COVID-19

13

vaccines greatly diminish the risk to Tinnen from COVID-19 whether he is in prison or not. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Moreover, and in any event, the section 3553(a) factors counsel against reducing Tinnen's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Tinnen is 41 years old and is incarcerated for conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and possession with intent to distribute a quantity of cocaine. See PSR ¶¶ 1–4; [D.E. 62]. Tinnen sold approximately 75 kilograms of cocaine from December 2013 to May 10, 2018. See PSR ¶¶ 7–11. Tinnen was arrested at a controlled buy in the parking lot of a popular Raleigh shopping mall. See id. After law enforcement blocked Tinnen's vehicle, Tinnen rammed his vehicle into law enforcement's van in an attempt to escape. See id. Tinnen engaged in this dangerous conduct even though Tinnen's wife and small child were in his vehicle. See id.

Tinnen's conduct is no surprise. Tinnen has a horrible criminal record evincing disrespect for the law and the community. Tinnen has drug trafficking convictions dating back more that two decades. See id. ¶ 16. Indeed, Tinnen is a recidivist's recidivist with convictions for felony possession with intent to sell and deliver cocaine (seven counts), possession with intent to manufacture, sell, and deliver marijuana (two counts), possession with intent to manufacture, sell, and deliver schedule II controlled substances, driving while impaired (two counts), hit and run failure to stop with property, reckless driving to endanger, driving after consuming alcohol under age 21 (two counts), driving while license revoked (three counts), possession of schedule VI controlled substances, resisting a public offer (two counts), public disturbance, eluding arrest in a motor vehicle

14

with two aggravating factors, and habitual felon. See id. ¶¶ 16–33. Nonetheless, Tinnen claims to have an "unblemished" record in federal prison. See [D.E. 74] 14.[5]

The court must balance Tinnen's "unblemished" record while federally incarcerated with the extraordinarily serious criminal conduct underlying his federal conviction, his terrible criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Tinnen's potential exposure to COVID-19, his medical conditions, and his release plan. The court recognizes that Tinnen's supportive family would help him if he was released. See [D.E. 75] 14. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Tinnen's arguments, the need to punish Tinnen for his serious criminal behavior, to incapacitate Tinnen, to promote respect for the law, to deter others, and to protect society, the court denies Tinnen's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 92], DISMISSES petitioner's section 2255 motion [D.E. 80], DENIES as meritless petitioner's motion to dismiss the

---

[5] Tinnen's BOP medical and disciplinary records are not in the record.

15

order of forfeiture [D.E. 90], DENIES petitioner's motion for compassionate release [D.E. 75], and DENIES a certificate of appealability. The clerk shall close the case.

SO ORDERED. This 29 day of March, 2022.

*JAMES C. DEVER III*
United States District Judge